# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMES JACK, JR.,** <br> Plaintiff <br> v. <br> **STANISLAUS COUNTY DEPUTY SHERIFF ERIC PEARSON and STANISLAUS COUNTY DEPUTY SHERIFF CODY GUNSOLLEY ,** <br> Defendants | **CASE NO. 1:17-CV-0520 AWI SAB** <br><br> **ORDER VACATING JANUARY 22, 2018 HEARING AND ORDER ON DEFENDANTS' SECOND MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND** <br><br> (Doc. Nos. 19, 26) |

This case stems from a violent confrontation between Plaintiff James Jack, Jr. ("Jack") and a fellow detainee at the Stanislaus County Jail. Following an order on Defendants' first Rule 12(b)(6) motion, Jack filed a First Amended Complaint ("FAC"). The FAC contains one count against Stanislaus County Sheriff's Deputies Eric Pearson ("Pearson") and Cody Gunsolley ("Gunsolley") for violations of the Fourteenth Amendment under 42 U.S.C. § 1983. Currently before the Court is Defendants second motion to dismiss and Jack's motion to amend.[1] For the reasons that follow, the motion to dismiss will be denied and the motion to amend will be granted.

## RULE 12(b)(6) FRAMEWORK

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc.,

---

[1] Hearing on the motion to amend is set for January 22, 2018. The Court has received Defendants' opposition and has determined that a hearing on this motion is not necessary. See Local Rule 230(g).

795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012).

However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

**FACTUAL BACKGROUND**

From the FAC, on March 7, 2016, a little after 1:00 a.m., Jack was arrested on an outstanding warrant by police officers from the City of Ceres and taken to the Stanislaus County Jail ("the Jail"). The Ceres police officers transferred custody of Jack over to County Sheriff's deputies. Approximately 10 hours later, Jack was taken to the emergency room of Doctor's Medical Center in Modesto after Jack was found to be behaving erratically. Jack was diagnosed with a fractured skull and traumatic brain injuries. Jack has been classified as incompetent by the Stanislaus County Superior Court due to his brain injuries, and he has no memory of the attack that caused his injuries.

Jack filed a request under the California Public Records Act with the County for documents relating to his injuries. The County refused to release any documents because each document was related to an active criminal investigation, even though many months had passed since Jack's injury and no charges against anyone had been filed. Jack petitioned the Stanislaus County Superior Court to order the release of the documents. After reviewing the documents *in camera*, the Superior Court concluded that the County had made false claims about the nature of the documents and about the existence of a criminal investigation and ordered the documents released. The documents that were released did not include video records of the jail. Jack's understanding of the events of March 7, 2016, is based largely on the documents obtained as part of the Public Records Act request.

When Jack arrived at the Jail, he was placed into a group housing unit along with about 40 other prisoners. Jack had never been in a jail and was behaving in a combative manner. Pearson did not provide Jack with a mattress, despite contrary state regulations.

Jack attempted to secure a mattress in the group housing unit around 3:30 a.m. In the process, he got into an argument with another prisoner who was weighed 300 lbs. Jack weighed

170 lbs. Pearson heard Jack arguing with the other prisoner. After speaking with Jack and the other prisoner, Pearson walked away to a different part of the jail and did nothing to ensure that Jack would not be injured by the much larger prisoner. Immediately after Pearson walked away, Jack was struck in the head, lifted in the air, and thrown to the floor by the larger prisoner. Jack remained on the floor unconscious for several minutes. Pearson claims that he did not hear any indication that a physical altercation occurred. Pearson either left the relevant area of the jail unattended in violation of state regulation, or ignored the physical altercation. Jack was bleeding and the blood was visible on his face.

Jack alleges that Pearson and Gunsolley failed to properly perform mandatory hourly safety checks on Jack for at least 8 hours. Specifically, Jack alleges upon information and belief that Pearson and Gunsolley completely failed to perform the mandatory hourly safety checks. Jack received no treatment for his brain injury during the 8 hour timespan. Gunsolley claims that he sought medical help for Jack around 6:30 a.m., following his first armband check. When presented with a written report that stated the incident time was 11:00 a.m., Gunsolley explained that he brought Jack for medical treatment several hours before the report was written and that Jack had spent several hours with medical staff. However, other documents indicate that Gunsolley did not seek medical attention for Jack until 11:00 a.m., which was about 5 hours after his shift began.

At 11:15 a.m., Jack was seen by a Jail nurse. After being evaluated, Jack was sent to Doctor's Medical Center. Jack was diagnosed as suffering from a comminuted skull fracture with subarachnoid, subdural, and extradural hemorrhaging. In addition to the skull fracture, Jack had contusions on his ear, neck, shoulder, and back.

## **DEFENDANTS' MOTION**

*Defendants' Arguments*[2]

Defendants argue that the "failure to monitor" claim was dismissed as part of the prior

---

[2] Defendants argue that the FAC does not allege a plausible Fourteenth Amendment claim for delay in obtaining medical treatment. In his opposition, Jack clarifies that he is simply alleging that the failure to properly monitor him led to a delay in obtaining medical treatment, and that he is not alleging a separate "medical delay" claim. See Doc. No. 21 at p. 4 n.1. The Court accepts Jack's clarification. Therefore, the FAC does not contain a separate and distinct Fourteenth Amendment claim for delay in obtaining medical treatment.

4

motion to dismiss because there was no explanation for how the safety checks were improperly performed. In response, Jack resorts to an allegation that is merely on "information and belief" that safety checks were not performed for at least eight hours. Such a claim is "entirely inconsistent" with the original complaint. The allegation is inconsistent with the prior complaint, which recognized that Gunsolley stated in a recorded interview that he woke Jack during Gunsolley's first rounds at about 6:30 a.m. Because Jack has no actual memory of events, his new allegation that no checks were performed during eight hours is based solely on speculation and presumption. The Court need not accept the factual inconsistencies between the two complaints on this key point. There is no basis for abandoning Gunsolley's account regarding the first rounds of his shift. Further, because the FAC does not allege a known vulnerability or increased risk, no plausible Fourteenth Amendment claim is stated. Jack had no identified medical need, was not observed to be injured, and there was no intentional decision to allow Jack to suffer untreated.

*Plaintiff's Opposition*

Jack argues that he has adequately alleged a failure to monitor claim. First, contrary to Defendants' argument, there is no inconsistency between the original complaint and the FAC. The original complaint did not allege that safety checks actually occurred. Further, even if there was an inconsistency, there was no bad faith between the two complaints. Second, there is no requirement that the guards be aware of a known vulnerability, increased risk, or medical need for purposes of failing to monitor. Jack argues that he was intentionally exposed to a substantial risk by the failure to conduct welfare checks for eight hours.

*Legal Standard*

Pre-trial detainees possess personal security interests that are protected by the Fourteenth Amendment. See Castro v. County of L.A., 833 F.3d 1060, 1069-71 (9th Cir. 2016) (en banc); Redman v. County of San Diego, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc). In order to recover for injuries suffered while in custody, a pre-trial detainee "must show that the prison official acted with 'deliberate indifference.'" Castro, 833 F.3d at 1067-68; Redman, 942 F.2d at 1443. The elements of a Fourteenth Amendment claim for failure to protect and excessive force by a pre-trial detainee are: "(1) The defendant made an intentional decision with respect to the

5

conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." Castro, 833 F.3d at 1071. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn on the facts and circumstances of each particular case.'" Id. (quoting Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015)). The third element is "more than negligence but less than subjective intent -- something akin to reckless disregard." Id. Courts within this district have extended *Kingsley* and *Castro* to claims beyond excessive force and failure to protect claims.[3] E.g. Elliot v. Solis, 2017 U.S. Dist. LEXIS 176291, * 12 (E.D. Cal. 2017); Campos v. County of Kern, 2017 U.S. Dist. LEXIS 32520, *16-*17 (E.D. Cal. 2017); Osegueda v. Stanislaus Cty. Pub. Safety Ctr., 2017 U.S. Dist. LEXIS 6311, *15-*16 (E.D. Cal. 2017).

*Discussion*

The FAC alleges that the deputies completely failed to conduct any monitoring/safety checks for a period of eight hours, despite regulations requiring such checks. See Doc. No. 66. Courts have recognized that violations of regulatory duties may be considered as part of the totality of the circumstances in determining whether a defendant acted with "deliberate indifference." See Blackmon v. Sutton, 2015 U.S. Dist. LEXIS 3045, *17-*18 (D. Kan. Jan. 12, 2015) (rejecting a prisoner's motion for new trial when the jury was instructed to consider a regulation relating to medical treatment of a prisoner as part of the evidence as a whole relating to deliberate indifference); Miles v. Jones, 2010 U.S. Dist. LEXIS 139617, *26-*27 (S.D. Fla. Nov. 22, 2010) (noting that there was insufficient evidence that a guard was deliberately indifferent to the safety of a prisoner including *inter alia* the absence of a flagrant violation of a regulatory duty); cf. Castro, 833 F.3d at 1073 (noting violations of regulations); A.G. v. Burroughs, 2015 U.S. Dist. LEXIS 118350, at *13-14 (D. Or. June 22, 2015) (holding that a minor had adequately

---

[3] For purposes of this motion, the Court follows *Castro* to analyze Jack's failure to monitor claim.

alleged that a social worker was deliberately indifferent where the social worker's certification of foster parents suffered from six significant errors/problems and violated a regulation). California mandates "direct visual observation"[4] of inmates at least every 60 minutes. See 15 C.C.R. § 1027 (2016 ed.); 15 C.C.R. § 1027.5. Safety checks may deter violence amongst prisoners, or they may serve to obtain timely medical help for an inmate who has been assaulted or is otherwise in some form of medical distress. See Frary v. County of Marin, 81 F.Supp.3d 811, 836-37 (N.D. Cal. 2015); Wereb v. Maui County, 727 F.Supp.2d 898, 923 (D. Haw. 2010); Estate of Abodllahi v. County of Sacramento, 405 F.Supp.2d 1206-07 (E.D. Cal. 2005). The Northern District of California has noted that these California regulations recognize the importance of regular and timely safety checks to the health and welfare of inmates, and that a jail's failure to provide for regular monitoring of inmates could represent deliberate indifference to substantial risks to inmates. See Frary, 81 F.Supp.3d at 836-37; see also In re Estate of Rice, 675 F.3d 650, 679 (7th Cir. 2012) ("If no checks were made, a factfinder certainly could conclude that the guards who were required to make those checks were indifferent to the concerns underlying the rule mandating those checks.").

With respect to Pearson, the FAC indicates that he did not perform safety checks over a period of three hours. Per regulation, this represents three missed safety checks. This is a significant number. The significance of these missed checks is amplified because of Pearson's alleged failure to protect. As discussed in the prior order on the motion to dismiss, Pearson was aware that Jack was belligerent or combative and was in a confrontation with a much larger inmate over a mattress around 3:30 a.m. See Jack v. County of Stanislaus, 2017 U.S. Dist. LEXIS 150367, *13-*14 (E.D. Cal. Sept. 15, 2017). Despite the threat posed by Jack's behavior and confrontation, Pearson did not return during the remaining three hours of his shift. In light of the nature and purpose of the mandated regulatory safety checks, and considering the circumstances of the failure to protect claim, the complete failure to perform safety checks for three hours could represent deliberate indifference to a substantial risk of harm to Jack's safety. See In re Estate of

---
[4] "'Direct visual observation' means direct personal view of the inmate in the context of his/her surroundings without the aid of audio/video equipment. Audio/video monitoring may supplement but not substitute for direct visual observation." 15 C.C.R. § 1006.

7

Rice, 675 F.3d at 679; Baston v. Yett, 2017 U.S. Dist. LEXIS 200046, *8-*9 (E.D. Cal. Dec. 5, 2017); cf. Frary, 81 F.Supp.3d at 836-37; Wereb, 727 F.Supp.2d at 923; Estate of Abodllahi, 405 F.Supp.2d at 1206-07.

With respect to Gunsolley, there are no allegations that he was aware of the altercation between Jack and the larger inmate. Nevertheless, the FAC indicates that Jack was housed with 40 other inmates, and Gunsolley did not conduct any safety checks for five hours. That is, he failed to conduct five mandatory safety checks even though there was greater opportunity for violence between a large number of inmates. There is no indication that Gunsolley made any attempts to provide for some form of monitoring of Jack. The FAC indicates that it was only when another inmate spoke to Gunsolley that Gunsolley sought medical attention for Jack. Given the nature and purpose of the regulations for safety checks that were in effect, and given the fact that Jack was housed with 40 other inmates, the complete failure to perform safety checks for five hours could represent deliberate indifference to a substantial risk of harm to Jack's welfare. See In re Estate of Rice, 675 F.3d at 679; Baston, 2017 U.S. Dist. LEXIS 200046 at *8-9; cf. Frary, 81 F.Supp.3d at 836-37; Wereb, 727 F.Supp.2d at 923; Estate of Abodllahi, 405 F.Supp.2d at 1206-07.

Defendants argue that the FAC and the original complaint are fatally inconsistent. The Court cannot agree. First, the original complaint alleged that the Defendants failed to properly perform safety checks. The Court found that allegation was ambiguous and could mean one of two things, either safety checks were not performed at all or safety checks were actually performed but in a faulty manner. See Jack, 2017 U.S. Dist. LEXIS 150367 at *15. The FAC now clarifies that the checks were not performed at all. There is no inconsistency. Second, Defendants note that the original complaint made allegations that Gunsolley stated that he obtained help shortly after his first rounds at 6:30 a.m. However, both the original complaint and the FAC include this allegation, but also allege that other documents show that help was not actually obtained until after 11:00 a.m. That is, both the original complaint and the FAC in essence allege that Gunsolley lied about when he sought help for Jack. There is no inconsistency. Finally, Defendants make much of the fact that Jack has made certain key allegations under

8

information and belief. However, as the Ninth Circuit has held, "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible," factual allegations may be made on "information and belief." Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017); Jack, 2017 U.S. Dist. LEXIS 150367 at *21. Here, Jack's inability to remember renders the key facts peculiarly within the Defendants' knowledge. Moreover, the passage of eight hours before Jack received medical assistance and the fact that Jack has obtained jail records from the County could easily form the basis for alleging on information and belief that no safety checks were made for eight hours. That is, the passage of time and the records received constitute a basis for the allegation that is beyond mere speculation. See id. Finally, even if there is inconsistency, as Jack correctly argues, inconsistency alone is not a basis to dismiss claims. "[T]here is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith – a showing that can only be made after the party is given an opportunity to respond under the procedure so Rule 11 – inconsistent allegations are simply not a basis for striking the pleading." PAE Gov't Servs, Inc. v. MPRI, Inc., 514 F.3d 856, 860 (9th Cir. 2007). Defendants have not alleged or shown that Jack's pleadings were made in bad faith, nor have Defendants made any motions under Rule 11. In the absence of bad faith, inconsistency by itself is not a basis to dismiss the monitoring claims. See id.

In sum, dismissal is inappropriate.

**II.     Motion To Amend**

*Plaintiff's Argument*

Jack seeks leave to amend the FAC to include negligence claims under California law against Defendants. Jack explains that the basis for his common law negligence claim is essentially the same as his § 1983 failure to protect claim, and that the failure to conduct safety checks forms the basis of a negligence per se or common law negligence claim. Jack contends that there is no prejudice to Defendants, amendment is not futile, and that his counsel simply overlooked the relevant authority.

9

*Defendants' Opposition*

Defendants contend that amendment should not be allowed. There is prejudice because additional research and litigation activity will occur. This is especially applicable to Gunsolley, who might be dismissed as a result of the pending motion to dismiss. Further, there has been undue delay. The factual basis for the negligence claims were present months ago in April 2017, and the legal basis of the claim was recognized by courts in 2008. Notably, in 2012, Jack's counsel pled negligence claims in a similar case in the Northern District of California. Finally, Jack has already filed an amended complaint, and the negligence theories were not included. Courts have particularly broad discretion to deny amendment when there are repeated failures to cure pleading deficiencies.

*Legal Standard*

When a party may no longer amend a pleading as a matter of right under Rule of Civil Procedure 15(a)(1), the party must either petition the court for leave to amend or obtain consent from the adverse parties. Fed. R. Civ. Pro. 15(a)(2); Keniston v. Roberts, 717 F.2d 1295, 1300 (9th Cir. 1983). Rule 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. Pro. 15(a)(2); C.F. v. Capistrano Unified Sch. Dist., 654 F.3d 975, 985 (9th Cir. 2011); Zucco Partners, LLC v. Digimarc Ltd., 552 F.3d 981, 1007 (9th Cir. 2009). "This policy is to be applied with extreme liberality." C.F., 654 F.3d at 985; Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). However, a court may deny leave to amend "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., and futility of amendment." Zucco, 552 F.3d at 1007; Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008). These considerations are not given equal weight, and delay by itself is insufficient to deny leave to amend. DCD Programs, 833 F.2d at 186; Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Industry, 655 F.2d 1252, 1254-55 (9th Cir. 1981). Prejudice to the defendant is the most important factor, but amendment may be denied upon a

sufficiently strong showing of other factors. See Eminence Capital, 316 F.3d at 1052; Keniston, 717 F.2d at 1300. "Absent prejudice, or a strong showing on any of the remaining [considerations], there exists a presumption under Rule 15(a) in favor of granting leave to amend." C.F., 654 F.3d at 985. Where a plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the "district court's discretion to deny leave to amend is particularly broad." Zucco, 552 F.3d at 1007.

*Discussion*

California imposes a common law duty on prison guards to protect prisoners from foreseeable harm. Cotta v. County of Kings, 686 F. App'x 467, 469 (9th Cir. 2017) (citing Giraldo v. California Dep't of Corr. & Rehab., 168 Cal.App.4th 231 (2008)). Because there is a viable failure to protect claim against Pearson, there is also a viable common law negligence claim based on the same failure to protect. See Cotta, 686 F. App'x at 469 (noting that liability for negligence is less stringent than liability under the Fourteenth Amendment). Furthermore, because there are viable Fourteenth Amendment claims for failing to properly monitor the health and welfare of Jack, it is unclear at this time why a negligence claim based on the failure to conduct safety checks should be excluded. Cf. id.

Defendants' arguments against permitting amendment are not persuasive. First, there is no legitimate prejudice to Defendants. This case is in its early stages, and a scheduling order and discovery deadlines have not been set. The factual bases for the new negligence claims are generally the same as the Fourteenth Amendment failure to protect and failure to monitor claims that are already present.[5] Second, there has been no repeated failure to cure deficiencies in the complaint. One prior motion to dismiss was filed and ruled upon. Jack cured the deficiencies that were identified in that order by either adding additional factual allegations to the FAC or by dropping parties from the litigation. Negligence claims were not previously pled, so there were no deficiencies concerning negligence that could be corrected. Seeking to add new claims at this time is not in and of itself a basis for denying amendment. See DCD Programs, 833 F.2d at 186

---

[5] Additionally, because the failure to monitor claim against Gunsolley is not being dismissed, Defendants' argument that relies on the absence of a claim against Gunsolley is without merit.

(liberality in granting leave to amend is not dependent on whether the amendment will add causes of action). Finally, assuming without deciding that there was undue delay, undue delay by itself is not a basis for denying leave to amend. See id.; Hurn, 655 F.2d at 1254-55. Defendants have not demonstrated an adequate basis for denying leave to amend.

Jack has lodged a proposed Second Amended Complaint ("SAC"). Defendants do not address the particular allegations in the proposed SAC. The proposed SAC largely tracks the allegations in the FAC, but includes negligence claims against Pearson and Gunsolley. After reviewing the SAC, the Court will order Jack to file a different amended complaint. Under Count One, Jack should include allegations that differentiate the claims and liable conduct of Pearson from the claims and liable conduct of Gunsolley, just as he did with respect to the negligence count. See Bryson v. Gonzales, 534 F.3d 1282, 1290 (10th Cir. 2008); Flores v. EMC Mortg. Co., 997 F.Supp.2d 1088, 1103 (E.D. Cal. 2014). Further, the phrase "and delay and denial of access to medical care for a serious but treatable medical condition," found at Page 11 Paragraph 78, is problematic. This identical language appears in the FAC, see Doc. No. 18 at Page 11 Paragraph 78, and suggests that Jack is pursuing a separate "medical delay" claim. However, Jack's opposition expressly states that he is not pursuing such a claim.[6] See Doc. No. 21 at p. 4 n.1. The Court has relied upon and accepted Jack's representation as part of resolving this motion. See Footnote 2, *supra*. A second amended complaint should omit this language or make clear that Jack is not pursuing a separate "medical delay" claim. Finally, although "negligence per se" was raised in the motion, it is not clearly alleged in the proposed SAC. If Jack intends to rely on "negligence per se," he must expressly allege the theory and identify the particular regulations that he contends fit within that doctrine.[7] See id.

---

[6] Additionally, the Court has found that Jack stated a "failure to protect claim" against Pearson. Nevertheless, an express failure to protect claim against Pearson is not clearly pled under Count One. If Jack intends to pursue such a claim, he must expressly allege it under Count One.

[7] The parties have not adequately developed their arguments with respect to negligence per se. An initial review of the elements of negligence per se, see Cal. Evid. Code § 669(a); Rarmirez v. Nelson, 44 Cal.4th 908, 917-18 (2008), indicates that some of the regulations at issue may fit within this doctrine. However, because the parties have not adequately addressed the issue, the Court will not foreclose later challenges to the viability of a negligence per se claim, if one is included in an amended complaint.

In sum, Jack will be granted leave to file a second amended complaint, but he will not be permitted to file the lodged SAC. See C.F., 654 F.3d at 985.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. No. 19) is DENIED;
2. Plaintiff's motion to amend (Doc. No. 26) is GRANTED;
3. Within ten (10) days of service of this order, Plaintiff shall file a Second Amended Complaint that is consistent with the analysis of this order;
4. Within ten (10) days of service of the Second Amended Complaint, Defendants shall file an appropriate response;
5. If Plaintiff fails to timely file an amended complaint, then leave to amend will be deemed automatically withdrawn without further order, and Defendants shall file an answer within twenty (20) days of service of this order;
6. This case is referred to the Magistrate Judge for the purpose of conducting a scheduling conference and entering a scheduling order; and
7. The January 22, 2018 hearing on Plaintiff's motion to amend is VACATED.

IT IS SO ORDERED.

Dated: January 16, 2018

SENIOR DISTRICT JUDGE