UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES JACK, JR.,<br><br>    **Plaintiff**<br><br>    v.<br><br>**STANISLAUS COUNTY DEPUTY SHERIFF ERIC PEARSON and STANISLAUS COUNTY DEPUTY SHERIFF CODY GUNSOLLEY ,**<br><br>    **Defendants** | CASE NO. 1:17-CV-0520 AWI SAB<br><br>**ORDER ON DEFENDANTS' THIRD MOTION TO DISMISS**<br><br>(Doc. No. 33) |

    This case stems from a violent confrontation between Plaintiff James Jack, Jr. ("Jack") and a fellow detainee at the Stanislaus County Jail. Following orders on two Rule 12(b)(6) motions, Jack filed a Second Amended Complaint ("SAC"). The SAC contains one count against Stanislaus County Sheriff's Deputies Eric Pearson ("Pearson") and Cody Gunsolley ("Gunsolley") for violations of the Fourteenth Amendment under 42 U.S.C. § 1983 and one count against these defendants for state law negligence. Currently before the Court is Defendants' third motion to dismiss. For the reasons that follow, the motion to dismiss will be granted in part and denied in part.

**RULE 12(b)(6) FRAMEWORK**

    Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request

to amend the pleading was made . . . ." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

**FACTUAL BACKGROUND**

From the SAC, on March 7, 2016, a little after 1:00 a.m., Jack was arrested on an outstanding warrant by police officers from the City of Ceres and taken to the Stanislaus County Jail ("the Jail"). The Ceres police officers transferred custody of Jack over to County Sheriff's deputies. Approximately 10 hours later, Jack was taken to the emergency room of Doctor's Medical Center in Modesto after he was found to be behaving erratically. Jack was diagnosed with a fractured skull and traumatic brain injuries. Jack has been classified as incompetent by the Stanislaus County Superior Court due to his brain injuries, and he has no memory of the attack that caused his injuries. Jack's understanding of the events of March 7, 2016, is based largely on the documents obtained as part of a Public Records Act request.

When Jack arrived at the Jail, he was placed into a group housing unit along with about 40 other prisoners. Jack had never been in a jail and was behaving in a combative manner. Pearson did not provide Jack with a mattress.

Jack attempted to secure a mattress in the group housing unit around 3:30 a.m. In the process, he got into an argument with another prisoner who weighed 300 lbs. Jack weighed 170 lbs. Pearson heard Jack arguing with the other prisoner. After speaking with Jack and the other prisoner, Pearson walked away to a different part of the jail and did nothing to ensure that Jack would not be injured by the larger prisoner. Immediately after Pearson walked away, Jack was struck in the head, lifted in the air, and thrown to the floor by the larger prisoner. Jack remained on the floor unconscious for several minutes. Pearson claims that he did not hear any indication that a physical altercation occurred. Pearson either left the relevant area of the jail unattended in violation of state regulation, or ignored the physical altercation. Jack was bleeding and the blood was visible on his face.

Jack alleges that Pearson and Gunsolley failed to properly perform mandatory hourly safety checks on Jack for at least 8 hours. Specifically, Jack alleges upon information and belief that Pearson and Gunsolley completely failed to perform the mandatory hourly safety checks. Jack received no treatment for his brain injury during the 8 hour timespan. Gunsolley claims that he sought medical help for Jack around 6:30 a.m., following his first armband check.

At 11:15 a.m., Jack was seen by a Jail nurse. After being evaluated, Jack was sent to Doctor's Medical Center. Jack was diagnosed as suffering from *inter alia* a comminuted skull fracture with subarachnoid, subdural, and extradural hemorrhaging.

## **DEFENDANTS' MOTION**

*Defendants' Arguments*

Defendants argue that the negligence claim should be dismissed for several reasons. First, the SAC fails to plead compliance with the California Government Claims Act, and an allegation of compliance is necessary to state a claim. Second, Jack is attempting to make an end-run around the Court's prior dismissal of his Government Code § 845.6 claim by alleging that he was harmed by the failure to receive a mattress and the failure of Defendants to conduct safety checks. No recovery is possible because Jack's own conduct was the proximate cause of the fight with the larger inmate. That is, Jack's own actions were an independent force that interrupted any chain of causation. Third, the cited statutory and regulatory provisions are no basis for a negligence per se presumption under California Evidence Code § 669. 15 C.C.R. 1006 is merely a definitional section, 15 C.C.R. 1027 does not apply because neither deputy is a facility administrator. Further, there is no allegation that the deputies were not immediately available and accessible to Jack after being alerted of an emergency, and there is a failure to show that any violation of the regulation caused injury. 15 C.C.R. 1050 does not apply because the deputies are not facility administrators, and the regulation speaks to a local facility's plan, not to an individual deputy's decision. 15 C.C.R. 1270 does not apply because no deadline is set for the issuance of bedding materials, rather the regulation applies only to facilities holding persons longer than 12 hours. Further, the failure to issue Jack a mattress did not proximately cause his physical altercation, rather Jack's own

4

behavior caused the fight. Also, there is no indication that the regulation is designed to prevent the type of injury suffered by Jack. 15 C.C.R. 1272 does not apply because there are no allegations that either deputy was responsible for issuing mattresses. Finally, an opinion of the California Attorney General indicates that the regulations of 15 C.C.R. § 1000 et seq. are not intended to be enforced by the institution of legal action by the State of California.

*Plaintiff's Opposition*

Jack argues that dismissal is not proper. First, Jack argues that his negligence count is based on the common law and on conduct that the Court has previously found constituted a plausible violation of the Fourteenth Amendment, improper monitoring and failing to protect. The negligence claims do not depend on application of the negligence per se standard. Second, negligence per se is an evidentiary presumption. It is permissible but not necessary to plead an evidentiary presumption, and the evidentiary arguments Defendants make are not suited to a Rule 12(b)(6) motion. Review of a negligence per se presumption is especially improper because the first two elements of the presumption are normally questions of fact, and the court can benefit from expert testimony with respect to the last two elements. Third, even considering Defendants' arguments, 15 C.C.R. § 1027 does support the negligence per se presumption. The applicable version of § 1027 imposes a duty to monitor that is not applicable to a facility administrator. Finally, Government Code § 845.6 does not preclude liability. The section has no possible application to a failure to the failure to protect claim, and Defendants' interpretation would insulate guards from the general rule that they are liable for their own negligence. Moreover, the section assumes that the guards are performing safety check because liability under § 845.6 is premised on the guarding knowing or having reason to know of an inmates need for medical help. Finally, Jack states that he complied with the Government Claims Act and alleged compliance in the original complaint. The failure to do so in the SAC was a mere oversight.

*Discussion*

a. California Government Claims Act

Compliance with the California Government Claims Act is an element of a cause of action against a public entity or a public employee acting within the scope of his employment. Hill v.

5

City of Clovis, 2012 U.S. Dist. LEXIS 32001, *65-*66 (E.D. Cal. Mar. 8, 2012); DiCampli-Mintz v. County of Santa Clara, 55 Cal.4th 983, 991 (2012); Briggs v. Lawrence, 230 Cal.App.3d 605, 613 (1991). Failure to allege compliance with the Government Claims Act subjects the state claims to dismissal. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

Here, Jack acknowledges that the SAC does not allege compliance with the Government Claims Act, but states that this was an oversight. A review of the original complaint shows that compliance was indeed alleged, see Doc. No. 1 at ¶ 22, and his opposition attaches documents that show a claim was submitted and rejected by Stanislaus County. See Doc. No. 35-1. It is clear that Jack can allege compliance with the Government Claims Act. Therefore, the negligence claims will be dismissed for failure to allege compliance with the Government Claims Act, but dismissal will be with leave to amend. See Hill, 2012 U.S. Dist. LEXIS 32001 at *67. Because Jack will certainly cure the Government Claims Act defect, the Court will address the remainder of Defendants' arguments.

  b. Negligence

The parties have made arguments with respect to negligence and negligence per se. The Court will address negligence and negligence per se separately.

    1. Common Law Negligence

"In order to establish liability on a negligence theory, a plaintiff must prove duty, breach causation, and damages." Conroy v. Regents of the Univ. of Cal., 45 Cal.4th 1244, 1250 (2009). California imposes a common law duty on prison guards to protect prisoners from foreseeable harm. Cotta v. County of Kings, 686 F. App'x 467, 469 (9th Cir. 2017); Lawson v. Superior Ct., 180 Cal.App.4th 1372, 1389-90 (2010); Giraldo v. California Dep't of Corr. & Rehab., 168 Cal.App.4th 231, 246-51 (2008).

As part of the prior motion to dismiss, the Court recognized *Cotta* and *Giraldo* and held that Jack had viable negligence claims against Defendants for failure to monitor and a viable negligence claim against Pearson for failure to protect, because the complaint contained plausible Fourteenth Amendment claims and the Fourteenth Amendment claims have more stringent

6

standards. See Jack v. Pearson, 2018 U.S. Dist. LEXIS 6841, *17-*18 (E.D. Cal. Jan. 16, 2018). The Court's analysis does not change. The fact that negligence per se is invoked in the SAC has no bearing on the plausibility of these claims because the Defendants were under a duty to protect, irrespective of any regulatory or statutory command. That is, the common law has recognized the duty to protect that a prison guard owes to prisoners/detainees.

Defendants also contend that Jack is making an end-run around this Court's prior dismissal of his Government Code § 845.6 claim. Government Code § 845.6 creates liability for a public employee who knew or had reason to know that a prisoner needed immediate medical care, but failed to reasonably summon such care. See Cal. Gov. Code § 845.6; Jett v. Penner, 439 F.3d 1091, 1098-99 (9th Cir. 2006). The Court previously dismissed a § 845.6 claim because there were no allegations that Defendants knew or actually had reason to know of Jack's injury, but failed to summon help. See Jack v. County of Stanislaus, 2017 U.S. Dist. LEXIS 150367, *40-*41 (E.D. Cal. Sept. 15, 2017). In essence, because the Defendants did not at least have reason to know of Jack's injuries, they were not under a duty to summon medical care. In contrast, the SAC contains allegations that show both Defendants owed a duty to monitor Jack, and, because Pearson was actually aware of the dispute between Jack and the much larger inmate over a mattress at 3:30 a.m., Pearson owed Jack a duty to protect him against harm from the larger inmate. The duties to monitor and to protect are separate and independent duties from the need to summon medical help. The presence or absence of an actual physical injury, or knowledge thereof, does not diminish the Defendants' duty to monitor or Pearson's duty to protect. Because of the distinct nature of the claims, Jack is not making an "end-run" around the prior dismissal of his § 845.6 claim.

Finally, Defendants contend that Jack's own behavior was an intervening cause that broke the chain of causation from any conduct by Defendants. Presumably, Defendants mean that Jack was belligerent and essentially picked a fight with the larger inmate over a mattress. The SAC shows that Jack was belligerent, got into an argument with the larger inmate, Pearson was aware of the argument, Pearson spoke to Jack and the large inmate, Pearson left and never returned, and when Pearson left, the large inmate assaulted Jack. The allegations indicate that the duty to protect arose at a minimum as soon as Pearson became aware of the argument. There is no

indication that Jack did anything from that point until he was assaulted. In terms of the duty to monitor, after the assault, there is no indication that Jack did anything, rather he was either unconscious or suffering from some form of "disorientation." Given the allegations, at this time there does not appear to be conduct from Jack that would intervene to defeat the negligence claims of failure to protect and failure to monitor.

In sum, dismissal of Jack's failure to protect and monitor negligence claims is inappropriate.

### 2. Negligence Per Se

The doctrine of negligence per se is not a separate cause of action, but instead creates an evidentiary presumption. Johnson v. Honeywell Intl., Inc., 179 Cal.App.4th 549, 555 (2009). As codified in California Evidence Code § 669, negligence per se provides that "statutes may be admitted to establish a standard or duty of care in negligence actions." Elsner v. Uveges, 34 Cal.4th 915, 923 (2004). Evidence Code § 669(a) reads that the "failure of a person to exercise due care is presumed if: (1) he violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." Cal. Evid. Code § 669(a); Ramirez v. Nelson, 44 Cal.4th 908, 917-18 (2008); Spriesterbach v. Holland, 215 Cal.App.4th 255, 263-64 (2013). Thus, "the plaintiff 'borrows' statutes to prove duty of care and standard of care," but "still has the burden of proving causation." Johnson, 179 Cal.App.4th at 555-56. The first two elements of negligence per se are normally considered questions for the trier of fact, while the last two elements are determined by the court as a matter of law. Ramirez, 44 Cal.4th at 918; Spriesterbach, 215 Cal.App.4th at 264. If the plaintiff establishes the elements of negligence per se, a presumption of negligence is created and the burden then shifts to the defendant to rebut the presumption. See Spriesterbach, 215 Cal.App.4th at 264. For negligence per se to apply, there must be a valid underlying cause of action for negligence. Millard v. Biosources, Inc., 156 Cal.App.4th 1338, 1353 n.2 (2007).

Because it is an evidentiary presumption and not a cause of action that is separate from common law negligence, plaintiffs generally are not required to allege negligence per se. See Waldo v. Eli Lilly & Co., 2013 U.S. Dist. LEXIS 145772, *23 (E.D. Cal. Oct. 7, 2013). However, where it is clear that a plaintiff intends to utilize the presumption, it is appropriate to plead the presumption. Cf. Jack, 2018 U.S. Dist. LEXIS 6841 at *20. If a plaintiff pleads negligence per se, there should be sufficient allegations to plausibly show the presumption's applicability. See Garcia v. Clovis Unified Sch. Dist., 627 F.Supp.3d 1187, 1204-06 (E.D. Cal. 2009). Alleging negligence per se without allegations that plausibly indicate the presumption's applicability is grounds for dismissal. See Coppola v. Smith, 935 F.Supp.2d 993, 1016-17 (E.D. Cal. 2011).

(A)   15 C.C.R. § 1006

Defendants are correct that § 1006 is a definitional section. As a definitional section, the section merely provides meaning to other regulations, it does not itself proscribe conduct or protect certain classes of individuals from particular injuries. While § 1006 may be considered for other purposes in this case, as a matter of law § 1006 by itself cannot form the basis of a negligence per se presumption under Evidence Code § 669.

(B)   15 C.C.R. § 1270

In relevant part, 15 C.C.R. § 1270 dictates that, for an inmate who is expected to remain overnight in a detention facility is, the standard issue bedding and linens are one serviceable mattress, one mattress cover or sheet, one towel, and one blanket.

With respect to the elements of a negligence per se presumption, there is a problem with at least the fourth element. A plain reading of this regulation shows that it is intended to ensure that prisoners who stay overnight in a detention facility have clean and adequate bedding. It is unclear what type of "injury" (if any) that this regulation may be attempting to prevent. Likely the regulation simply seeks to ensure humane conditions of confinement. See, e.g. Brown v. City of Detroit, 2013 U.S. Dist. LEXIS 26662, *4-*7 (E.D. Mich. Feb. 27, 2013) ("[F]ederal courts have found that forcing a pretrial detainee to sleep without a mattress, or on the floor on a mattress, constitutes a violation of the Fourteenth Amendment.") (quoting Oladipupo v. Austin, 104 F.Supp.2d 626, 639 (W.D. La. 2000)). The Court is unaware of any indication that § 1270 is

intended to prevent the type of physical harm suffered by Jack at the hands of larger inmate. The Court cannot conclude that Jack's physical injuries are the type of injury that § 1270 was intended to prevent. Therefore, § 1270 does not form the basis of a negligence per se presumption under Evidence Code § 669.[1]

### (C) 15 C.C.R. § 1272

In relevant part, 15 C.C.R. § 1272 reads: "Any mattress issued to an inmate in any facility shall be enclosed in an easily cleaned, non-absorbent ticking and conform to the size of the bunk . . . ."

This section merely describes the mattress that is to be issued under § 1270. It is similar to the definitional regulation, § 1006. While the SAC's allegations show that Jack would be entitled to a mattress that complies with this regulation, again, the type of injury (if any) that this regulation is designed to prevent is unknown. What seems clear is that Jack's physical injuries would not even arguably be the type of injury that § 1272 is designed to prevent. Therefore, § 1272 does not form the basis of a negligence per se presumption under California Evidence Code § 669.[2]

### (D) 15 C.C.R. § 1050

In relevant part, 15 C.C.R. § 1050 reads: "Each administrator of [detention facility] shall develop and implement a witness classification plan designed to properly assign inmates to housing and activities according to [certain categories and criteria] which will provide for the safety of the inmates and staff. . . . Each administrator of a [detention facility] shall establish and implement a classification system which will include the use of classification officers or a classification committee in order to properly assign inmates to housing . . . ."

There is a problem with at least the first element of the negligence per se presumption. Defendants are correct that the plain language of § 1050 shows that it applies to facility administrators, the regulation makes no demands of any other detention facility employees. There

---

[1] This does not mean, however, that § 1270 cannot be used or considered for other purposes in this case. The Court is only holding that § 1270 does not meet the requirements of Evidence Code § 669 under the facts alleged in the SAC.

[2] This does not mean, however, that § 1272 cannot be used or considered for other purposes in this case. The Court is only holding that § 1272 does not meet the requirements of Evidence Code § 669 under the facts alleged in the SAC.

10

is some case law addressing § 1050, but it is sparse.  The few relevant cases indicate either that § 1050 applies to an official who runs a facility, i.e. the sheriff, see Cortez v. County of L.A., 294 F.3d 1186, 1190 (9th Cir. 2002) ("As administrator of the jail, the Sheriff is responsible for developing and implementing policies pertaining to inmate housing. Cal. Code Regs. tit. 15, § 1050."); Bougere v. County of L.A., 141 Cal. App. 4th 237, 242 n.2 (2006) ("As operator of the jail, the sheriff is responsible for developing and implementing policies pertaining to inmate housing.  (Cal. Code Regs., tit. 15, § 1050.)"), or that only the failure to establish, develop, and implement a classification system implicates § 1050 (as opposed to an employee who improperly or erroneously classifies a detainee/inmate).[3]  See Pimentel v. County of Fresno, 2011 U.S. Dist. LEXIS 106014, *20 (E.D. Cal. Sep. 19, 2011).  The Court is aware of no case law that holds or indicates that an erroneous classification decision by a non-administrator implicates § 1050. Given the language of the regulation itself, the seemingly contrary case law, and the absence of any authority that suggests otherwise, Pearson could not have violated § 1050 because he is not the Stanislaus County Sheriff, he is not alleged to be an administrator, and he is not alleged to have failed to develop and implement a classification system.[4]  Therefore, § 1050 does not form the basis of a negligence per se presumption under California Evidence Code § 669.[5]

### (E) 15 C.C.R. § 1027

At the relevant time, 15 C.C.R. § 1027 stated in pertinent part:

> A sufficient number of personnel shall be employed in each local detention facility to conduct at least hourly safety checks of inmates through direct visual observation of all inmates and to ensure the implementation and operation of the programs and activities required by these regulations. There shall be a written plan that includes the documentation of routine safety checks.
>
> Whenever there is an inmate in custody, there shall be at least one employee on duty at all times in a local detention facility or in the building which houses a local

---

[3] The Court notes that the Ninth Circuit has held that classifications systems that were promulgated under § 1050 cannot form the basis of a negligence per se instruction under California Evidence Code § 669.1.  See Espinoza v. Sniff, 694 F. App'x 575 (9th Cir. 2017).

[4] The Court is aware that the first element is *generally* a question for the trier of fact.  See Ramirez, 44 Cal.4th at 918. However, because Pearson is not subject to the requirements of § 1050, he could not have violated § 1050 as a matter of law.

[5] This does not mean, however, that § 1050 cannot be used or considered for other purposes in this case.  The Court is only holding that § 1050 does not meet the requirements of Evidence Code § 669 under the facts alleged in the SAC.

11

detention facility who shall be immediately available and accessible to inmates in
the event of an emergency. Such an employee shall not have any other duties which
would conflict with the supervision and care of inmates in the event of an
emergency. . . .
. . .
In order to determine if there is a sufficient number of personnel for a specific
facility, the facility administrator shall prepare and retain a staffing plan indicating
the personnel assigned in the facility and their duties.

With respect to the elements of a negligence per se presumption, first, § 1027 is similar to § 1050 in that there are directives identified for the facility administrator. As stated above, the administrator is to prepare a staffing plan that assigns staff members particular duties, including performing at least hourly safety checks. However, implicit within the regulation is a directive that some employee is actually required to conduct visual safety checks and some employee is actually required to remain accessible to inmates. Case law suggests that detention facility personnel other than administrators are under obligations from § 1027 to monitor and be available to inmates. See Frary v. County of Marin, 81 F. Supp. 3d 811, 826-27 (N.D. Cal. 2015) (considering § 1027 in determining whether an individual prison guard was entitled to qualified immunity for failing to monitor inmates); Wedgeworth v. City of Newport Beach, 2015 Cal. App. Unpub. LEXIS 985, *20-*21 (Feb. 11, 2015) ("Plaintiffs also alleged in the first amended complaint that defendants were negligent by failing to make regular welfare checks on William in his jail cell. Defendants offered admissible evidence that they made hourly welfare checks as required by California Code of Regulations, title 15, section 1027, which plaintiffs do not dispute.");[6] Jones v. County of L.A., 2014 Cal. App. Unpub. LEXIS 770, at *61-62 (Jan. 31, 2014) ("In this case, Deputy Kidder was also required to perform regular checks. Title 15, section 1027 of the California Code of Regulations requires a sufficient number of personnel at each local detention facility to conduct at least hourly 'safety checks' of inmates."). At this time there is a sufficient indication that Defendants are subject to § 1027 because of the tasks that they were assigned at the Prison.

Second, as discussed above, the Court cannot conclude at this time that Jack's conduct

---

[6] Despite state rules, the Court may consider unpublished state cases as persuasive authority. See Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); Robles v. Agreserves, Inc., 158 F.Supp.3d 952, 976 n.12 (E.D. Cal. 2016).

1 represents some type of intervening cause that breaks the chain of causation. The allegations in
2 the SAC are not such that the Court can hold as a matter of law that the second element of the
3 negligence per se presumption cannot be met.

Third, § 1027 has several purposes. One purpose is to account for the presence of the inmate, identify if anything appears out of order, and look for signs of observable distress or trauma. Frary, 81 F.Supp.3d at 836. Another purpose is to deter inmates from assaulting one another. See Inmates of the Riverside County Jail v. Clark, 144 Cal. App. 3d 850, 865 (1983) ("The evidence showed that such supervision was the most effective way to deter assaults by prisoners on other prisoners. (See Tit. 15, Cal. Admin. Code, § 1027.)"). Jack suffered injuries related to both of these purposes. He was physically assaulted by another inmate, he suffered serious injuries, he was unconscious and in some state of "disorientation," and his condition was not discovered for about eight hours. Thus, the allegations indicate that the third element is met.

Finally, as a detainee at a detention facility, Jack is clearly within the class of individuals who is intended to be protected by the regulation – convicted inmates and pre-trial detainees.

In sum, the SAC contains sufficient allegations to indicate that § 1027 could meet the elements of a negligence per se instruction; dismissal is inappropriate.[7]

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. No. 33) is GRANTED IN PART in that the negligence claims are DISMISSED with leave to amend in order to include allegations that demonstrate compliance with the California Government Claims Act;

2. Defendants' motion to dismiss is GRANTED with respect to 15 C.C.R. §§ 1006, 1050, 1270, and 1272 and negligence per se, and those regulations are DISMISSED without leave to amend;[8]

---

[7] The Court is not making a final determination on the issue of whether § 1027 sufficiently meets the elements of a negligence per se presumption. The Court is only holding that the allegations in the SAC and the arguments made do not show that § 1027 does not meet the elements of the presumption as a matter of law.

[8] The Court emphasizes that simply because these regulations will not support a negligence per se presumption does not mean that these regulations have no other relevance in this case.

13

3. Within seven (7) days of service of this order, Plaintiff shall file a Third Amended Complaint;

4. Within seven (7) days of service of the Third Amended Complaint, Defendants shall file an answer; and

5. This case is referred back to the Magistrate Judge for the purpose of conducting a scheduling conference and entering a scheduling order.

IT IS SO ORDERED.

Dated:   March 30, 2018                              _____
                                            SENIOR DISTRICT JUDGE